The **EXPRESS–NEWS CORPORATION, Kym Fox, and Jerome P. Curry, Relators,**

v.

**Honorable Carolyn H. SPEARS, Respondent.**

No. 04–88–00526–CV.

Court of Appeals of Texas, San Antonio.

March 15, 1989.

Rehearing Denied April 11, 1989.

Mark J. Cannan, Laura Cavaretta, Lang, Cross, Ladon, Boldrick & Green, San Antonio, for relators.

Jackson Speed, Thomas Drought, Brite & Drought, San Antonio, Robert W. Wachsmuth, Brock & Kelfer, John F. Tafolla, San Antonio, Charles L. Babcock, Jackson & Walker, Dallas, for respondent.

Before CADENA, C.J., and BUTTS and REEVES, JJ.

## OPINION

REEVES, Justice.

This is an original mandamus proceeding which arises from relators' claim that their right to intervene in a civil lawsuit was denied by the trial court, following the sealing of the record and of all papers on file in the cause of action. Relators, none of whom was a party to the lawsuit below, include the Express–News Corporation, a Texas corporation which publishes the San Antonio *Express–News* in San Antonio; Kym Fox, a reporter for the newspaper and a taxpayer in Bexar County; and Jerome P. Curry, a taxpayer in Bexar County and a contributor to the Roman Catholic Archdiocese of San Antonio.

The lawsuit for which intervention is sought was a civil action for damages sustained by two minor children, their parents and brother; the children were allegedly fondled by Federico Fernandez, a Franciscan Friar, who was indicted on two counts of indecency with a child. The remaining defendants in the civil lawsuit, who are real parties in interest in this mandamus action, in addition to the priest, include the Franciscan Friars of the Chicago–St. Louis Province of the Sacred Heart and the Roman Catholic Archdiocese of San Antonio. The lawsuit was originally filed as Cause No. 88–CI–07960 on May 4, 1988, more than a month after the indictments in the criminal cases were handed down by the grand jury. The litigation was concluded by a judgment signed on September 16, 1988. Contemporaneous with the signing of the judgment, the trial court ordered all records and pleadings in the case sealed.

Relators request that this Court grant them a writ of mandamus directing respondent to vacate the order striking the relators' plea in intervention and further directing respondent to enter a new order denying the Franciscan Friars' motion to strike. Relators further ask this Court to direct the trial court to hold a hearing to allow them to challenge the sealing order, or to vacate the sealing order in Cause No. 88–CI–07960.

At issue in the instant proceeding is whether the trial court abused its discretion in granting the motion to strike the plea in intervention and in denying the relators' request to intervene after judgment was signed, but while the trial court retained plenary jurisdiction over the cause. We hold the trial court acted properly in granting the motion to strike the plea in intervention and in denying the intervention, and, accordingly, we deny the writ of mandamus.

The real parties in interest urge, and the relators acknowledge, that in *Comal County Rural High School District v. Nelson*, 158 Tex. 564, 314 S.W.2d 956 (1958), the Supreme Court of Texas held that a post-judgment motion to intervene was untimely, and found that:

> No plea of intervention could be filed in the cause until and unless the district judge set aside his order of dismissal and this he refused to do. We, therefore, are of the opinion that Rule 60, T.R.C.P., is inapplicable. Under the circumstances we conclude that the Court of Civil Appeals was without power to set aside the trial court's judgment of dismissal.

*Id.* 314 S.W.2d at 957. TEX.R.CIV.P. 60, provides in pertinent part that:

> Any party may intervene, subject to being stricken out by the court for sufficient cause on the motion of the opposite party. . . .

In the case before this Court, relators filed their "Plea in Intervention and Motion in Relation to Sealed Court Records" on September 28, 1988, with hearing set for October 5, 1988. On the date of the hearing, a pleading was filed by the Franciscan Friars, entitled "Motion to Strike Plea in Intervention and Motion in Relation to Sealed Court Records," in which they asserted that the authority to permit intervention in the cause lapsed immediately upon entry of the final judgment on September 16, 1988. Moreover, the motion urged that no modification, reform, or correction of or relief from the judgment had been sought, pursuant to TEX.R.CIV.P.

329b, and, therefore, the attempted intervention was untimely under existing case authority. While relators could have objected to a hearing on this motion on grounds of lack of sufficient notice, they instead waived the requisite notice and proceeded to have the trial court hear both their plea in intervention, as well as the motion to strike the plea. At the conclusion of the hearing, the trial court denied the plea in intervention and granted the motion of the Franciscan Friars to strike the plea; both orders were signed by the trial court on October 13, 1988.

Relators argue that *Comal County*, and other decisions cited by the real parties in interest as authority for denying the intervention, involved factual circumstances in which the party attempting intervention had an interest in the subject matter of the litigation prior to the time judgment was signed. Relators suggest that their own interest in the subject matter of this proceeding did not arise until after the judgment was signed. Relators contend also that in contrast to those cases cited by the real parties in interest, the instant circumstances do not involve any attempt to modify, reform, amend, or change the outcome of the litigation; their only interest is one in which they contend the right of public access to judicial proceedings is adversely affected by the trial court's decision to permit the records to be sealed after judgment. In *St. Paul Insurance Co. v. Rahn*, 586 S.W.2d 701 (Tex.Civ.App.—Corpus Christi 1979, no writ), one appellate court discussed the right to intervention in the following language:

> Intervention is authorized by Rule 60. The right to intervene is given in furtherance of a speedy disposition of suits and to prevent multiplicity of actions. *Mulcahy v. Houston Steel Drum Co.*, 402 S.W.2d 817 (Tex.Civ.App.—Austin 1966, no writ). The intervenor bears the burden to show a justiciable interest, legal or equitable, in the lawsuit, and the trial court has wide discretion in judging the sufficiency of the opposing party's motion to dismiss the petition in intervention. *Rogers v. Searle*, 533 S.W.2d 440 (Tex.Civ.App.—Corpus Christi 1976, no writ); *Armstrong v. Tidelands Life Insurance Co.*, 466 S.W.2d 407, (Tex.Civ. App.—Corpus Christi 1971, no writ); *Mulcahy v. Houston Steel Drum Company, supra.* But, where the petition in intervention is filed *after* judgment, the Supreme Court [in *Comal County*] has held that Rule 60 does not apply....

*Id.* at 703 (emphasis added). The real parties in interest have responded to relators' arguments by asserting that mandamus should be denied because of the procedural untimeliness of the relators' plea in intervention following judgment. They also assert the lack of standing on the part of relators to file their motion to vacate the judgment subsequent to the trial court's denial of their plea in intervention. The real parties in interest urge that relators' proper remedy would have been to appeal the denial of the intervention. *See Times Herald Printing Co. v. Jones*, 730 S.W.2d 648 (Tex.1987) (per curiam). Relators countered by urging that the accelerated manner in which its interest in the judgment arose rendered appeal of the denial of intervention an unfeasible remedy, and they further argued that they could not even have designated an appellate record pursuant to TEX.R.APP.P. 50 and 53, where they could not have known what documents or pleadings to select for inclusion, because of the court's order sealing the record. We do not reach the merits of these conflicting contentions because relators admit they could have appealed and did not, but instead urge that the newsworthiness of the resolution of the lawsuit would have been lost because of the delay inherent in the appellate process.

The real parties in interest contend that this Court does not have to consider relators' right of public access arguments because the trial court never had these arguments before it for a determination on the merits, where the intervention was denied and the real parties' motion to strike the plea was granted. Relators imply that because the trial court possessed plenary jurisdiction to modify, reform, or set aside the judgment at the time the plea in intervention was heard, there was an abuse of

discretion in the trial court's refusal to permit the intervention. Confronted with an analogous question in *St. Paul Insurance Co. v. Rahn,* one appellate court observed that:

> The trial court had plenary power over its judgment at the time St. Paul filed its petition [in intervention] and could, *if it chose,* vacate, modify, correct or reform the judgment or grant a new trial. *Transamerican Leasing Company v. Three Bears, Inc.,* 567 S.W.2d 799 (Tex. Sup.1978); Rule 329b(5). But such power did not in any way impeach the finality of the ... judgment. The judgment disposed of all issues and parties before the court and was therefore final. *North East Independent School District v. Aldridge,* 400 S.W.2d 893 (Tex.Sup. 1966). St. Paul was not a party to the suit at that time, and its subsequent petition in intervention could not serve to recharacterize a previously final judgment into an interlocutory order. *Comal County Rural High School District No. 705 v. Nelson,* 158 Tex. 564, 314 S.W.2d 956 (1958).

586 S.W.2d 701, 702 (Tex.Civ.App.—Corpus Christi 1979, no writ) (emphasis added). There, as here, the operative language is that the trial court had plenary power to modify or vacate the judgment *if it chose.* Under these circumstances, as well as the authority of *Comal County,* the real parties in interest urge that the trial court had no choice but to deny an untimely intervention, and was not, therefore, required to reach a decision on whether to vacate or modify the prior judgment, where the motion to vacate was not drafted or presented until after the time the intervention had already been denied, thereby depriving relators of standing to complain. Relators urge that *Comal County* is only valid authority for the proposition that intervention must be filed prior to judgment where the potential intervenor has an interest in the subject matter of the litigation. There is, however, no authority for such a reading of TEX.R.CIV.P. 60, or of the cases construing it. The Supreme Court of Texas in *First Alief Bank v. White,* 682 S.W.2d 251 (Tex.1984) has recently reiterated, without any such qualification as relators would impose, that:

> [A] plea in intervention comes too late if filed after judgment and may not be considered unless and until the judgment has been set aside.

*Id.* at 252. Under the facts before us, we hold the intervention was untimely, and, therefore, the trial court had no choice but to deny it. We do not reach the merits of relators' contentions regarding right of public access to the record of the proceedings where it was not before the trial court, because "an appellate court may not deal with disputed areas of fact in a mandamus proceeding." *West v. Solito,* 563 S.W.2d 240, 245 (Tex.1978).

We accordingly decline to grant the writ of mandamus.

CADENA, Chief Justice, dissenting.

The majority opinion gives two reasons for its refusal to discuss the merits of relators' contentions which are based on the important right of the public to free access to judicial records. The first justification is that the question of the right of access "was not before the trial court." According to the majority opinion, the trial court declined to consider these questions and to set aside the secrecy order because, since the trial court had "no choice" but to strike the plea in intervention, there was no need to determine whether the trial court should have modified or vacated its secrecy order. The notion that a question which a trial court "declined" to consider establishes that such question "was not before the trial court" is surely a novel one. However, the merits of this argument need not here be considered. The conclusion that the trial court properly refused to consider the motion to vacate the secrecy order because the relators were not entitled to intervene runs afoul of the reasoning in the cases on which the majority relies in determining that relators had no right to intervene.

The second justification for the dismissal of relators' contentions based on the right of access to judicial records is somewhat puzzling. We are told that an appellate

court "may not deal with disputed areas of fact in mandamus proceedings." The majority makes no effort to identify the disputed "areas of fact" which limit consideration of relators' contention based on the right of access. There are, in truth, no such disputed areas of fact.

Since the majority opinion rests solely on the cases dealing with the right to intervene after judgment and the conclusion which is drawn from such cases, a discussion of such cases is required. At the outset, it must be noted that only *Times Herald Printing Co. v. Jones*, 730 S.W.2d 648 (Tex.1987) (per curiam), involved the public's right of access to judicial records, and the opinion in that case, like the majority opinion here, avoids discussion of that right and concentrates solely on strictly procedural rules relating to intervention. In any event, *Times Herald* differs from this case because, there, the attempt to intervene came after the trial court had lost its plenary power over its judgment.

In *Comal County Rural High School District v. Nelson*, 158 Tex. 564, 314 S.W. 2d 956 (1958), the right of the State of Texas to intervene after judgment was denied. The Supreme Court said, "No plea of intervention could be filed in the cause until and unless the district judge set aside his order...." *Id.* 314 S.W.2d at 957.

There is an important distinction between *Comal County* and the case before us. There, several school district patrons were attacking the validity of the creation of the district. The suit, therefore, involved a question in which the State of Texas had a legitimate, if not exclusive, interest. Under these circumstances, the State could have intervened in the case prior to rendition of judgment against the school patrons. In our case, relators had no legitimate interest in the suit for damages. None of the rights asserted by the parties in the damage suit could foreseeably result in a judgment affecting the rights of relators. As pointed out in *St. Paul Fire Insurance Co. v. Rahn*, 586 S.W.2d 701, 703 (Tex.Civ.App.—Corpus Christi 1979, no writ), a case in which the party seeking to intervene after judgment could have done

so before the judgment was rendered, a party seeking to intervene "bears the burden to show a justiciable interest, legal or equitable...." It was not until rendition of judgment in the damage suit and the entry of the secrecy order that any interest of relators, legal or equitable, was affected.

In *First Alief Bank v. White*, 682 S.W.2d 251, 252 (Tex.1984), no effort was made to intervene until after the trial court had lost jurisdiction over the case. The Supreme Court, relying on *Comal County*, said that a plea in intervention "comes too late if filed after judgment and may not be considered until the judgment has been set aside." *Id.* Of course, under the facts of *First Alief Bank*, the trial court had lost its power to set aside the judgment.

If it is true that intervention after judgment is not possible until after the judgment has been set aside, then the critical question in this case is not the striking of the plea in intervention, but the refusal of the trial court to vacate the secrecy order. Such refusal is not addressed by the majority, although the setting aside of such order is obviously the only relief sought by relators, and the attempt to intervene was no more than one means of achieving that end.

As pointed out in the first paragraph of this dissent, the majority argues that there was no need for the trial court to consider relators' rights of access and to determine whether to set aside the secrecy order because it had "no choice" but to deny the intervention. The reasoning is somewhat strange.

According to the authorities relied on by the majority, the plea in intervention could not be considered until the judgment was set aside. The majority somehow manages to conclude that, since the intervention could not be considered until after the judgment had been set aside, the trial court was precluded from setting the judgment aside because relators' right to intervene had been denied. Reduced to basic and simple terms, the argument is that intervention was improper because the judgment had not been set aside, and the judg-

ment could not be set aside because relators could not intervene. Either the argument is circular or the majority has managed to pull itself off the ground by strenuously tugging at its own bootstraps.

The importance of the right of public access to court records cannot be questioned. The requirement of openness is basic to our form of government. Only by giving the greatest possible publicity to the acts of public officials can we make effective the guaranteed freedom of discussion of the acts of such officials and the proceedings of public tribunals. If judge and counsel are required to act under the public gaze they are more strongly moved to strict conscientiousness in the performance of their duties. Throughout history, secret tribunals have exhibited abuses which are absent when judicial proceedings and records are freely accessible to the public. *See In re Shortridge*, 99 Cal. 526, 34 P. 227, 228 (1893); 6 J. WIGMORE, EVIDENCE § 1834 (Chadbourn rev. ed. 1976).

The right of the press and public to have access to judicial records is guaranteed by the First and Fourteenth Amendments to the United States Constitution. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 604, 102 S.Ct. 2613, 2618, 73 L.Ed. 2d 248 (1982); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 559, 100 S.Ct. 2814, 2818, 65 L.Ed.2d 973 (1980) (Stewart, J., concurring). Recognition of this right by the common law antedates federal and state constitutions. *United States v. Mitchell*, 551 F.2d 1252, 1260 (D.C.Cir. 1976), *rev'd on other grounds sub nom Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); *Bundy v. State*, 455 So.2d 330 (Fla. 1984). In *Nixon v. Warner Communications, Inc., supra,* the United States Supreme Court not only reaffirmed the existence of this right but held that there is a presumption of the right of access to judicial records. This presumption casts upon those seeking to block such access the burden of establishing the existence of facts which justify secrecy. *Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 511, 104 S.Ct. 819, 825, 78 L.Ed.2d 629 (1984). No other rule is consistent with the traditional principle that the public has "the right to know what is done in their courts." *In re Shortridge*, 34 P. at 228–29. "What happens in the court room is public property.... There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit or censor events which transpire in proceedings before it." *Craig v. Harney*, 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546 (1947).

The fact that in this case a settlement agreement is involved is irrelevant, even if we ignore the fact that the secrecy order is not limited to the settlement agreement. A settlement agreement filed with the court or incorporated in the judgment becomes a part of the public records as a public component of a trial, especially where, as here, approval by the court of the settlement is essential because it involves the rights of minors. The court's approval of a settlement is a matter which the public has a right to know and evaluate.

I have no difficulty in concluding that both the public and the news media have standing to challenge any secrecy order. Recognition of such a rule is, at least in some cases, essential to the preservation of the right of access. For example, in this case all parties to the damage action are determined to uphold the secrecy order. Unless standing of the public and the news media to challenge the attempt at secrecy is recognized, the attempt to deny access to judicial records is immunized against challenge.

It can be freely admitted that the right of access is not absolute. But those opposing access are required to show "an overriding interest" based on findings that closure is narrowly tailored to serve that interest. The proponents of secrecy in this case have made no such showing.